OPINION
{¶ 1} Defendant-appellant David Walther appeals his conviction and sentence for one count of failure to comply with the order or signal of a police officer, in violation of R.C. § 2921.331(B), a felony of the third degree.
 {¶ 2} On August 2, 2007, Walther was charged by secret indictment with one count of *Page 2 
failure to comply with the order or signal of a police officer. At his arraignment on September 7, 2007, Walther entered a not guilty plea.
 {¶ 3} Following a two-day jury trial which ended on November 14, 2007, Walther was found guilty. The trial court sentenced Walther to 3 years in prison and suspended his driver's license for 15 years. Walther filed a notice of appeal with this Court on December 17, 2007. On January 10, 2008, we filed a motion ordering Walther to show cause as to why his appeal should not be dismissed for failure to file a timely notice of appeal of his conviction and sentence within thirty days pursuant to App. R. 4(A). Walther filed a response to our show cause order on January 28, 2008, in which he requested permission
 {¶ 4} to file a delayed appeal. On February 5, 2008, we sustained Walther's request and allowed the matter to proceed.
 I {¶ 5} The incident which forms the basis for this appeal occurred on the night of July 18, 2007, when Officer Shawn Williams of the Beavercreek Police Department received an anonymous tip that Walther was in the area of North Fairfield Road and the Crossings in Beavercreek, Ohio. Officer Williams knew Walther was subject to arrest on outstanding felony warrants. Officer Williams had received information that Walther was driving a red Mercury Marquis bearing the license plate number DTX 9896. Although Officer Williams did not know Walther onsight, he obtained a physical description indicating that Walther was a white male, five feet, eleven inches tall, approximately 185 pounds, with brown hair, and was in his late fifties.
 {¶ 6} Officer Williams testified that he traveled to the BP Gas Station at the corner of *Page 3 
North Fairfield and the Crossings and pulled into the parking lot. In the rear of the parking lot, Officer Williams observed a red Mercury Marquis whose license plate number began with the letters DTX. Officer Williams also observed a white male standing next to the vehicle talking on a cell phone. After pulling his cruiser within ten yards of the red Marquis and briefly making eye contact with the individual, Officer Williams confirmed that the man matched the physical description of Walther and exited the police cruiser in order to question him. Officer Williams testified that Walther made eye contact with him again. Walther then got back in the Marquis and drove out of the parking lot at a high rate of speed. Officer Willilams followed Walther for a short period of time before abandoning the pursuit because of safety concerns due to the high volume of traffic in the area.
 {¶ 7} Officer Williams testified that he immediately went back to the police department and requested the BMV photo of Walther in order to positively identify the individual who he attempted to apprehend. Officer Williams further testified that only fifteen minutes had elapsed between the time he first observed Walther in the parking lot of the gas station and when he viewed the appellant's photo at the police department.
 {¶ 8} Walther was subsequently arrested on August 14, 2007, and charged with failure to comply with the order or signal of a police officer. After a jury trial, Walther was found guilty, and the trial court sentenced him accordingly. It is from this judgment that Walther now appeals.
 II {¶ 9} Walther's sole assignment of error is as follows:
 {¶ 10} "THE JURY ERRED AS A MATTER OF LAW WHEN IT FOUND *Page 4 
APPELLANT DAVID D WALTHER GUILTY OF VIOLATING ORC SECTION 2921.331(B) BECAUSE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH PROPER IDENTIFICATION OF THE APPELLANT BEYOND A REASONABLE DOUBT."
 {¶ 11} In his sole assignment of error, Walther contends that insufficient evidence was adduced at trial in order to properly identify him as the individual who fled from Officer Williams on the night of July 18, 2007. Specifically, Walther argues that Officer Williams' identification testimony was inherently unreliable based on the totality of the circumstances surrounding the incident. Thus, Walther asserts that the State failed to properly establish that he was the individual who committed the charged offense beyond a reasonable doubt.
 {¶ 12} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." State v.McKnight, 107 Ohio St.3d 101,112, 837 NE.2d 315, 2005-Ohio-6046. "In reviewing a claim of insufficient evidence, `[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted)." State v. Crowley, Clark App No. 2007 CA 99,2008-Ohio-4636.
 {¶ 13} When he was questioned during trial, Officer Williams provided the following testimony regarding his identification of Walther at the gas station in Beavercreek, Ohio:
 {¶ 14} "Officer Williams: * * * I then proceeded to the rear, going this direction to the rear of the BP, and that's where I saw immediately a red Mercury Marquis parked facing to the west, to the rear of the lot. I pulled up to it at an angle. I first immediately noticed that the license plate — the first three letters of the license plate DTX. As I noticed that, I immediately *Page 5 
noticed the subject as well standing outside the parked vehicle. The subject was standing just outside the car. The driver's door was open[,] and I could see that [the] subject was talking on a cell phone.
 {¶ 15} "As I pulled in at an angle to the vehicle the subject was facing away from me, right hand on the cell phone. He turned around and looked at me as I turned in behind his vehicle. He turned around. We both made eye contact. I then began to exit my car. As soon as we made eye contact, he began to enter his vehicle. He turned away from me and began to enter his vehicle.
 {¶ 16} "I exited my car — I opened the driver's side, stood up, exited my car. I told him to stop, put his hands up. The subject, as he was getting into the vehicle, turned around, as a hesitation he looked at me again. We made eye contact one more time. He then continued to get into his vehicle, closed the door and he drove off."
 {¶ 17} "* * *
 {¶ 18} "The State: All right. Officer Williams, did you take any steps to in an way confirm or deny the identity of the individual that you saw at the BP Station.
 {¶ 19} "Officer Williams: Yes.
 {¶ 20} "The State: Please tell the ladies and gentlemen of the Jury what steps you took to confirm that identification.
 {¶ 21} "Officer Williams: After the pursuit ended and we had lost the vehicle, I proceeded directly to the [Beavercreek] Police Department. I asked dispatch to print me out a BMV image of David Walther, becuase I wanted to confirm that I had, in fact — that, in fact, had been the Defendant. I wanted to see this image as soon as possible while the subject's face was *Page 6 
still fresh in my mind.
 {¶ 22} "So I proceeded to the Police Department and I checked the BMV image that dispatch had provided, and the subject portrayed on the image matched the face of the individual I saw getting into the red Mercury Grand Marquis.
 {¶ 23} "The State: How much time had elapsed from the time that you saw the person next to the vehicle, to the time you made the match of the BMV photo?
 {¶ 24} "Officer Williams: It had been around 15 minutes."
 {¶ 25} "* * *
 {¶ 26} "The State: Officer Williams, I just have one more question. Is the individual that you observed behind that BP Station talking on their cell phone and getting into that red Grand Marquis, is that the person in the Courtroom today?
 {¶ 27} "Officer Williams: Yes.
 {¶ 28} "The State: Would you please point to him and describe what he's wearing?
 {¶ 29} "Officer Williams: Sitting right there with the dark colored suit and striped tie.
 {¶ 30} "The State: Officer, do you have any doubt at all that's the person who got into that car?
 {¶ 31} "Officer Williams: I have no doubt that is the same subject."
 {¶ 32} "* * *
 {¶ 33} On redirect examination, Officer Williams provided the following additional testimony which reinforced his prior identification of Walther:
 {¶ 34} "The State: Have you ever worn glasses?
 {¶ 35} "Officer Williams: No. *Page 7 
 {¶ 36} "The State: Do you have any prescription — have you ever had any eye injury, anything at all?
 {¶ 37} "Officer Williams: No.
 {¶ 38} "The State: All right. Now, I would ask you again to describe to the ladies and gentlemen of the Jury what the lighting [was] like behind the BP Station that night.
 {¶ 39} "Officer Williams: There were three or four overhead lights that you would normally find in a gas station.
 {¶ 40} "The State: And you told [defense counsel] during cross-examination that Mr. Walther was approximately the distance that you are in that chair to the distance that I am at this door.
 {¶ 41} "Officer Williams: Approximately, yes.
 {¶ 42} "The State: I want you to tell the ladies and gentlemen of the Jury, on that night was the lighting behind that BP Station good enough that you would have been able to see my face at this distance?
 {¶ 43} "Officer Williams: Yes.
 {¶ 44} "The State: All right. And you testified — you told [defense counsel] in response to his questions that you caught a glimpse of Mr. Walther, approximately a second-approximately a total of two to three seconds, at the most, is that right?
 {¶ 45} "Officer Williams: Yes.
 {¶ 46} "The State: In addition to the overhead lights, were there any other lights focused on Mr. Walther?
 {¶ 47} "Officer Williams: Yes, my headlamps were on. *Page 8 
 {¶ 48} "The State: Your headlamps?
 {¶ 49} "Officer Williams: Yes.
 {¶ 50} "The State: As a Police Officer, are you trained to look for certain parts of the body when you come up on a person?
 {¶ 51} "Officer Williams: Yes.
 {¶ 52} "The State: And what is that? What are those parts of the body?
 {¶ 53} "Officer Williams: Always the hands.
 {¶ 54} "The State: Always the hands. Where was the right hand of the subject by that vehicle?
 {¶ 55} "Officer Williams: It was to his face.
 {¶ 56} "The State: To his face?
 {¶ 57} "Officer Williams: Yes.
 {¶ 58} "The State: Did it stay to his face when he turned and looked at you?
 {¶ 59} "Officer Williams: Yes."
 {¶ 60} Although the confrontation occurred around 10:00 p.m, Officer Williams testified that he observed a suspect matching Walther's description from only short distance away in a well lit area. Officer Williams further testified that he and Walther made eye contact for a total of two to three seconds, in which Officer Williams was able to clearly observe Walther's face. It is important to note that Officer Williams was trained to observe a suspect's hands when initiating a stop. Officer Williams testified that Walther was holding a cell phone up to his face with his left hand, while he was holding his right hand up to the other side of his face. In checking the placement of Walther's hands, Officer Williams would have been looking *Page 9 
directly at his face during the confrontation. After Officer Williams ended his pursuit of Walther, he immediately went to the police station and retrieved a BMV photo of Walther. From that photo, he positively identified Walther as the individual who he had attempted to place under arrest. Lastly, the record indicates that Officer Williams did not appear at all uncertain when testifying regarding his identification of Walther. Viewed in light most favorable to the prosecution, it is clear that Officer Williams' testimony was sufficient to establish Walther as the perpetrator of the charged offense beyond a reasonable doubt.
 {¶ 61} Walther's sole assignment of error is overruled.
 III {¶ 62} Walther's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
 WOLFF, P. J. and BROGAN, J., concur. *Page 1